IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| JIMMY SMITHSON, | Case No.    5:21-cv-1225 |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | JURY TRIAL DEMANDED |
| UNION PACIFIC RAILROAD COMPANY., a Delaware Corporation, | |
| Defendant. | |

Plaintiff Jimmy Smithson ("Smithson") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

**PRELIMINARY STATEMENT**

1.    Union Pacific enforces a company-wide fitness-for-duty program ("Fitness-for-Duty"), through which the company imposes a blanket policy automatically removing from service employees who disclose or who Union Pacific suspects have certain health conditions. Union Pacific then subjects employees whom it removes from service to a Fitness-for-Duty evaluation. Union Pacific applies this policy regardless of whether the employee has been safely performing the essential functions of their job. Union Pacific evaluations do not assess whether an employee is capable of safely or effectively performing their work.

2.    Employees responsible for train movement must be certified by the Federal Railroad Administration ("FRA"). The FRA allows railroads to certify employees through one of twelve color-vision examinations, including the *Ishihara* test, which consists of a number of

colored plates, each containing a circle of dots appearing randomized in color and size, that form a number or shape clearly visible to those without color-vision deficiency, and invisible, or difficult to see, to those who are color-blind or who have color-vision deficiency.[1] Because employees who have color-vision deficiency may nevertheless be able to distinguish between colors, the FRA permits them to be certified through a color-vision field test ("CVFT"). Even employees who the employer deems have not met the employer's requirement to pass a CVFT may be certified and the employee allowed to work when there is reason to believe that they can perform their job's essential functions.

3.     Because employees responsible for train movement must be certified, Union Pacific's Fitness-for-Duty includes color-vision testing. In or around April of 2016, Union Pacific replaced its CVFT with a new test – the "Light Cannon" test. The old CVFT used existing train signal masts with actual wayside lights and lenses next to the tracks along the Right of Way or within the railyards; whereas the Light Cannon test uses a mobile light device that Union Pacific developed in-house. The Light Cannon test does not replicate what employees see in the field, and yet the majority of those who have been subjected to it fail, despite having successfully passed the old CVFT and performed their jobs without missing a signal for years or even decades.

4.     In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern and practice of discrimination under the ADA. *See Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The *Harris*-plaintiff's allegations "clearly encompass vision testing as it is included in the FFD program." *Harris,* 2019 U.S. Dist. LEXIS 16113, at *10-11 (D. Neb. Feb 1, 2019).

---

[1] Color-vision deficiency is the inability to distinguish certain color shades under normal lighting condition: whereas, color blindness is the inability to see colors. Color-vision deficiency is relatively common, *e.g.*, one in twelve men suffer from red-green color vision deficiency. And unlike color blindness, color-vision deficiency does not prevent its sufferers from performing tasks that require them to distinguish between colors.

5.      Smithson is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite each being qualified and safely performing his job without incident, Smithson was removed from service for a Fitness-for-Duty evaluation and excluded from work at Union Pacific on the basis of his real or perceived disability, which regards his ability to see color. Smithson was a putative class member in *Harris*, and now timely brings this action.

## JURISDICTION AND VENUE

6.      This action arises under the Federal Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* As such, this Court has jurisdiction under 28 U.S.C. § 1331.

7.      Venue is proper under 28 § 1391(b)(2), because a substantial part of the events or omissions that give rise to this lawsuit occurred in the Western District of Texas.

8.      Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the alleged unlawful practices were committed by Union Pacific in the Western District of Texas and because, but for the unlawful practices of Union Pacific, Smithson would have worked in the Western District of Texas.

## THE PARTIES

9.      Smithson resides in Windcrest, Texas. Smithson is an individual with a disability, as that term is defined under the ADA, who, at all times material to this lawsuit, was employed by Union Pacific in the State of Texas.

10.      Union Pacific is a railroad carrier engaged in interstate commerce.

## PROCEDURAL PREREQUISITES AND TIMELY FILING

11.      On February 19, 2016, counsel for Smithson, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska.  *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

12.      Smithson was a putative class member in the *Harris* case and Smithson's claim under the ADA were subject to tolling during the pendency of litigating the class-wide claims,

pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

13.     The *Harris* court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

14.     As a result of *Crown Cork* tolling, Smithson had three hundred (300) days from the date of the Eighth Circuit's order to file a Charge of Discrimination with the Equal Employment Opportunity Commission, "EEOC." Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the time for Smithson and other putative class members to file EEOC charges by an additional sixty (60) days.

15.     Smithson timely filed a Charge of Discrimination with the EEOC on March 8, 2020. The EEOC issued a determination on October 25, 2021, requiring that Smithson file a complaint in court by January 23, 2022.

16.     Smithson timely brings the present action.

## **FACTUAL ALLEGATIONS**

### ***UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES***

17.     Union Pacific's Medical Rules outline its Fitness-for-Duty program. The rules require that certain employees, including all employees in Operating Department field positions (such as Transportation, Engineering Services and Mechanical positions), undergo a Fitness-for-Duty evaluation where they report or Union Pacific suspects that they have one of an enumerated list of medical and/or physical conditions.

18.     When a Fitness-for-Duty evaluation is triggered, the employee is removed from work without pay while Union Pacific Health and Medical Services completes the evaluation and until Union Pacific informs the employee's supervisor that the employee has been cleared to return to work.

19.     Union Pacific Fitness-for-Duty includes color-vision testing. Suspected color-vision deficiency triggers a Fitness-for-Duty evaluation.

20.     FRA regulation requires that all locomotive engineers and conductors undergo

periodic certification. Under the fitness requirement, an engineer or conductor must have the ability to recognize and distinguish between the colors of railroad signals, as demonstrated through one of twelve forms of color-vision examination. Where an employee fails one of the listed examinations, FRA regulations state that an engineer or conductor may nonetheless be certified through a CVFT or where there is otherwise reason to believe that they can recognize and distinguish between colors of railroad signals.

21.     Union Pacific utilizes the 14-Plate Ishihara test to test for color-vision deficiency for FRA certification. When an employee fails the Ishihara test, Union Pacific subjects the employee, as part of the Fitness-for-Duty process, to a CVFT implemented in or around April 2016, called the Light Cannon test.

22.     The Light Cannon Test does not simulate real world conditions and does not assess the employee's ability to recognize and distinguish between colors of railroad signals.

23.     As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been removed from work without pay either for an extended period or indefinitely.

### PLAINTIFF JIMMY SMITHSON

24.     Smithson was hired by Union Pacific in Texas in 2006 and worked as a conductor until approximately March 2018, when he was removed from service.

25.     As a conductor, part of Smithson's job entailed reading and interpreting multicolored railroad traffic signal lights on signal masts. Smithson safely worked for Union Pacific for over thirteen years without misreading a signal.

26.     In 2006, Union Pacific administered Smithson an Ishihara color vision test as a part of his post-hiring physical examination. Smithson failed the Ishihara test and was assessed using the old Union Pacific CVFT in which Smithson read and relayed a series of signals from real railroad signal masts to assess his ability to read and interpret signals in the field. Smithson passed the CVFT and was allowed to work as a conductor.

27.     Between 2003 and 2018, Smithson took and failed the Ishihara test approximately

COMPLAINT FOR DAMAGES

three times as part of FRA conductor certification. On each occasion, Smithson took and passed the previous CVFT and was allowed to continue working.

28. On or about March 7, 2018, Smithson went to recertify as a conductor. He took and failed the Ishihara Test. On this occasion his test results triggered a Fitness-for-Duty evaluation and Union Pacific removed Smithson from work as a conductor.

29. On or about April 2, 2018, as part of the Fitness-for-Duty process, Union Pacific administered the newly adopted Light Cannon test instead of the old CVFT. Union Pacific concluded that Smithson missed three of twenty lights and failed the Light Cannon test. Smithson's Light Cannon test was initially delayed due to heavy rain and lightning, and when he was finally assessed, the weather continued to interfere with his ability to see the Light Cannon device. In addition, Smithson's test was interrupted on multiple occasions by traffic in the railyard.

30. On or about April 2, 2018, Union Pacific Chief Medical Officer, Dr. John P. Holland, denied Smithson FRA certification and issued him permanent work restrictions prohibiting him from working in any position requiring accurate identification of colored railroad wayside signals, including as a conductor. Union Pacific claimed that these restrictions could not be accommodated.

31. On or about April 3, 2018, Smithson wrote a letter to Dr. Holland informing him of the problems experienced during Smithson's Light Cannon Test, including inclement weather and interference from traffic. Smithson requested that he be permitted to retake the Light Cannon Test. Union Pacific denied Smithson's request.

32. On or about July 2, 2018, Union Pacific sent Smithson to optometrist Dr. Jeffrey Rabin, OD, PhD, for additional testing, and Dr. Rabin administered a battery of clinical color vision tests. Although Smithson failed the Ishihara test, Dr. Rabin determined that he passed several other color vision tests, including the D15 hue arrangement test and the Stereo-Optical OPTEC 900 lantern test. These test results were communicated to Union Pacific.

33. On or about September 19, 2018, Union Pacific again issued Smithson permanent work restrictions, which barred Smithson from working in any position requiring accurate color

signal recognition. Union Pacific claimed that these restrictions could not be accommodated.

34.     In the time since removing him from service, Union Pacific has persisted in its refusal to allow Smithson to return to his job as a conductor. At all times, Smithson was capable of performing the essential functions of his job, and he remains able to perform them today.

35.     In order to find alternative work and mitigate his damages, Smithson was caused to resign his position as a conductor, relinquishing his trainman seniority, after which he applied for a position in the Union Pacific mechanical department. Smithson also took and passed the Union Pacific frontline manager test. In or around January 2019, Union Pacific hired Smithson as an apprentice in the mechanical department.

36.     On or about July 10, 2019, Union Pacific abolished Smithson's position in the mechanical department and Smithson was placed on furlough. He has not returned to work with Union Pacific since.

37.     On information and belief, Union Pacific had and/or has one or more jobs in which Smithson could be returned to work despite the permanent work restrictions issued by Union Pacific.

38.     To the extent that Smithson needed reasonable accommodation, Union Pacific failed to provide them, and failed to even engage in an interactive process regarding what accommodations were possible.

39.     Smithson remains a Union Pacific employee on an indefinite medical leave of absence under the Union Pacific Fitness-for-Duty policy. To the extent that Smithson needed reasonable accommodation, Union Pacific has and continues to fail to provide Smithson with a reasonable accommodation or to engage in an interactive process regarding what accommodations were possible.

### CAUSES OF ACTION

**COUNT I**
***VIOLATION OF THE ADA***
***DISABILITY DISCRIMINATION – DISPARATE TREATMENT***

40.     Plaintiff incorporates the foregoing paragraphs by reference.

41.     The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). An individual is regarded as having such an impairment if they are subjected to an action prohibited under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C).

42.     At all relevant times, Union Pacific regarded Smithson as having an impairment and, therefore, Smithson was an individual with a disability under the ADA.

43.     At all relevant times, Smithson had the requisite skill, experience, education, and other job-related requirements of his positions, and was therefore a qualified individual under the ADA.

44.     At all relevant times, Smithson could perform the essential functions of his position, with or without reasonable accommodation.

45.     Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

46.     Discriminating against a qualified individual on the basis of disability under Section 12112(a) includes, among other things, "using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

47.     Union Pacific discriminated against Smithson on the basis of a real or perceived disability in one or more of the following ways:

a.      Removing Smithson from service and issuing work restrictions on the basis of his disability;

b.      Failing to utilize alternate clinical tests to the Ishihara Test to determine whether

Smithson can effectively read and interpret railroad signals;

c.      Using a field test that does not assess whether Smithson can effectively read and interpret railroad signals;

d.      Failing to otherwise assess whether Smithson is capable of reading and interpreting railroad signals; and

e.      Using a Fitness-for-Duty evaluation process that screens out qualified individuals with disabilities.

48.      Because Union Pacific violated 42 U.S.C. § 12112, Smithson has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Smithson is also entitled to attorneys' fees and costs incurred in connection with these claims.

49.      Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Smithson's rights and safety. As a result, Smithson is entitled to punitive damages.

**COUNT II**
***VIOLATION OF THE ADA***
***DISABILITY DISCRIMINATION – DISPARATE IMPACT***

50.      Plaintiff incorporates the foregoing paragraphs by reference.

51.      Smithson is a qualified individual with a disability within the meaning of the ADA.

52.      Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]" 42 U.S.C. § 12112(b)(6).

53.      Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3).

54.      Union Pacific discriminated against Smithson on the basis of disability in one or

more of the following ways:

    a.    Union Pacific's Fitness-for-Duty policies, including its use of the Light Cannon test, disproportionately and adversely impact qualified individuals with disabilities;

    b.    Union Pacific uses qualification standards that screen out or tend to screen out qualified individuals with disabilities; and

    c.    Union Pacific uses a Fitness-for-Duty evaluation process that screens out or tends to screen out qualified individuals with disabilities.

55.    Union Pacific cannot show that such qualifications standards are job-related and consistent with business necessity.

56.    Because Union Pacific violated 42 U.S.C. § 12112, Smithson has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Smithson is also entitled to attorneys' fees and costs incurred in connection with these claims.

57.    Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Smithson's rights and safety. As a result, Smithson is entitled to punitive damages.

## COUNT III
### *VIOLATION OF THE ADA*
### *FAILURE TO ACCOMMODATE*

58.    Plaintiff incorporates the foregoing paragraphs by reference.

59.    Smithson is a qualified individual with a disability within the meaning of the ADA.

60.    Discriminating against a qualified individual with a disability includes "not making reasonable accommodations to the known physical or mental limitations of the otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

61.    Union Pacific discriminated against Smithson by failing to provide Smithson with reasonable accommodation.

COMPLAINT FOR DAMAGES

62.     Because Union Pacific violated 42 U.S.C. § 12112, Smithson has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Smithson is also entitled to attorneys' fees and costs incurred in connection with these claims.

63.     Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Smithson's rights and safety. As a result, Smithson is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Union Pacific as follows:

1.     That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2.     An injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3.     For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4.     Pre-judgment interest, as provided by law;

5.     For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

6.     For an award of punitive damages;

7.     For all relief available under the ADA;

8.     For such other and further relief available by statute; and

9.     For such other and further relief as the Court deems just and equitable.

Date: December 13, 2021                    **HILDEBRAND, McLEOD & NELSON LLP**

By: */s/ Gavin S. Barney*
Anthony S. Petru* (CA # 91399)
petru@hmnlaw.com
Gavin S. Barney* (CA # 321880)
barney@hmnlaw.com
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, California 94612

1

Telephone: (510) 451-6732
Fax: (510) 465-7023

2

3

James H. Kaster* (CA #248949)
kaster@nka.com
Lucas J. Kaster* (CA # 291102)
lkaster@nka.com
**NICHOLS KASTER, PLLP**
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878

4

5

6

7

8

*pro hac vice application forthcoming*

9

Attorneys for Plaintiff Jimmy Smithson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES