IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Jimmy Smithson,<br><br>　　　Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Company,<br><br>　　　Defendant. | Civil Action No. 5:21-CV-01225-XR<br><br><br>**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT** |

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 2

      A.  Summary Judgment Standard. ....................................................................... 2

      B.  The *Turner* Court's Exhaustion of Administrative Remedies Requirement is Inapplicable
          Here. ............................................................................................................... 2

      C.  Fact Issues Preclude Summary Judgment on Smithson's Disability Discrimination
          Claims. ........................................................................................................... 6

          1) Smithson Presents Direct Evidence of Disability Discrimination. ................. 7

          2) Smithson is a Qualified Individual with a Disability Under the ADA. ........... 11

          3) Union Pacific's Light Cannon Test is Not a Valid Qualification Standard. ........ 14

              i.   Union Pacific's Color Vision Standards Fall Outside of the FRA Standards
                   and Never Underwent a Validation Process. ................................................ 14

      D.  Union Pacific Acted with Reckless Indifference to Plaintiffs' Rights ............. 17

III.  CONCLUSION ...................................................................................................... 17

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

Page

**Cases**

*Baker v. Union Pac. R.R. Co.,*
   580 F. Supp. 3d 647 (D. Neb. 2022) ........................................................................... 8

*Belk v. Southwestern Bell Telephone Co.*,
   194 F.3d 946 (8th Cir. 1999) ...................................................................................... 14

*Brasier v. Union Pac. R.R. Co.*,
   2023 WL 129534 (D. Ariz. Jan. 9, 2023) ................................................................... 8

Brunskill v. Kansas City Southern Railway Co.,
    2008 WL 413281 (W.D. Mo. Feb. 12, 2008) ............................................................ 16

*Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*,
   439 F.3d 894 (8th Cir. 2006) ...................................................................................... 13

*Cf. Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
   972 F.3d 83 (D.C. Cir. 2020) ...................................................................................... 5

*Cicalese v. Univ. of Texas Med. Branch*,
   924 F.3d 762 (5th Cir. 2019) ...................................................................................... 10

*Clark v. Champion Nat'l Security, Inc.,*
   952 F.3d 570 (5th Cir. 2020) ................................................................................. 10, 11

*David v. Caterpillar, Inc.*,
   185 F.Supp.2d 918 (C.D. Ill. 2002) ........................................................................... 17

*Earwood. V. Norfolk S. Ry. Co.,*
   845 F. Supp. 880 (N.D. Ga. 1993) .............................................................................. 6

*EEOC v. BNSF Ry. Co.*,
   902 F.3d 916 (9th Cir. 2018) ...................................................................................... 13

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
   778 F.3d 473 (5th Cir. 2015) ................................................................................... 7, 8

*Fabela v. Socorro Indep. Sch. Dist.*,
   329 F.3d 409 (5th Cir. 2003) ...................................................................................... 7

*Fair Hous. Ctr. Of Wash. V. Breier-Scheetz Props, LLC,*
   742 Fed.Appx 116 (9th Cir. 2018) .............................................................................. 17

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

*Fulbright v. Union Pac. R.R. Co.*,
  3:20-CV-2392-BK, 2022 WL 975603 (N.D. Tex. Mar. 31, 2022)...................................... 8, 11

*Gonzalez v. City of New Braunfels*,
  176 F.3d 834 (5th Cir. 1999) ......................................................................................... 11

*Hamilton v. Ortho Clinical Diagnostics*,
  2014 WL 2968497 (E.D. Ark. July 2, 2014) ................................................................... 8

*Jones v. Robinson Prop. Grp., L.P.*,
  427 F.3d 987 (5th Cir. 2005) ........................................................................................... 7

*Kitchen v. BASF*,
  952 F.3d 247 (5th Cir 2020) ..................................................................................... 10, 11

*Kolstad v. ADA*
  527 U.S. 526, 119 S.Ct. 2118 (1999)............................................................................. 17

*Littlefield v. Nevada*,
  195 F. Supp. 3d 1147 (D. Nev. 2016)............................................................................ 13

*Nall v. BNSF Ry. Co.,*
  917 F.3d 335 (5th Cir. 2019) ..................................................................................... 7, 10

*Portis v. First Nat. Bank of New Albany, Miss.*,
  34 F.3d 325 (5th Cir. 1994) ........................................................................................... 10

*Rachid v. Jack in the Box, Inc.,*
  376 F.3d 305  (5th Cir. 2004) .......................................................................................... 7

*Rizzo v. Children's World Learning Centers, Inc.,*
  84 F.3d 758 (5th Cir. 1996) ....................................................................................... 7, 11

*Rodriguez v. ConAgra Grocery Prod. Co.,*
  436 F.3d 468 (5th Cir. 2006) .................................................................................... 10, 11

*Sanders v. Union Pac. R.R. Co*,
  2021 WL 4783629 (D. Neb. Oct. 7, 2021) ...................................................................... 8

*Sandstad v. CB Richard Ellis, Inc.*,
  309 F.3d 893 (5th Cir. 2002) ........................................................................................... 2

*Trans World Airlines, Inc. v. Thurston*,
  469 U.S. 111 (1985)......................................................................................................... 7

*Turner v. BNSF RY. Co.,*
  138 F.4th 224 (5th Cir. 2025) ................................................................................. passim

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

*Vann-Foreman v. Illinois Cent. R.R. Co.*,
  Case No. 19 C 8069, 2022 U.S. Dist. LEXIS 10485 *11, 2022 WL 180749
  (N.D. Ill. Jan. 20, 2022) ........................................................................................................ 6

**Statutes**

42 U.S.C. § 12112................................................................................................................. 6, 7

**Rules**
49 C.F.R. §240 ......................................................................................................................... 3, 4
49 C.F.R. §242 ......................................................................................................................... 3, 4, 5
FCRP §56................................................................................................................................... 2

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Jimmy Smithson worked as a conductor for Union Pacific for nearly 12 years without ever missing a signal or operating unsafely. However, he lost his job because Union Pacific believed that his congenital color vision deficiency[1] permanently disabled him from working in his conductor position. Since Smithson could distinguish actual signals in the field, Union Pacific's basis for this conclusion was that he failed Union Pacific's homemade color vision test, the so-called Light Cannon test, which their own expert admitted was invalid. These straightforward facts have all the makings of a valid disability claim under the Americans with Disabilities Act ("ADA"). Plaintiff was able to perform his job with or without an accommodation, yet he was taken out of work because his employer perceived that he had a disability –color vision deficiency.

Union Pacific stretches the Fifth Circuit's recent decision in *Turner v. BNSF Railway Company*, to claim that Plaintiff was covered by an administrative exhaustion requirement through the Federal Railway Administration ("FRA") and governed by the Federal Railway Safety Act ("FRSA"). In reality, the *Turner* case is fundamentally distinct in that the field test there was undisputedly FRA-approved. Because there is, at very least, a triable question as to whether the FRA ever approved the Light Cannon test, the *Turner* exhaustion requirement is inapplicable on summary judgment.

Union Pacific then attempts to twist the simple elements of the ADA into a legal pretzel, suggesting that the plaintiff needs to show that Union Pacific's reliance on its own invalid test was

---

[1] Color vision deficiency does not mean color blind. PSSF ¶¶ 3-4. Color vision deficiency ranges from very mild to severe, with "one out of 12 men and one out of 220 women in the United States [having] some form of congenital red-green color deficiency." *Id.*

1

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

a pretext for discrimination to prevail. For this and related arguments, Union Pacific attempts to take us back in time by resurrecting cases and concepts from that time prior to the ADA Amendments Act ("ADAAA"). These efforts simply serve to confuse the straightforward facts here.

Smithson will demonstrate that the ADA's application to his case is simple: he was capable of performing his job – his record clearly demonstrates as much; Union Pacific decided he was disabled and took him out of work as a result – its own paperwork says so; and, the so-called justification for that decision, the Light Cannon test, is invalid and unreliable. Smithson's case creates obvious fact issues for a jury to decide, and summary judgment should be denied.

## II.   ARGUMENT

### A. Summary Judgment Standard.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. In so doing, [the Court] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citations omitted).

### B. The *Turner* Court's Exhaustion of Administrative Remedies Requirement is Inapplicable Here.

Union Pacific's administrative exhaustion argument hinges on its application of *Turner v. BNSF Railway Company* to the facts here, and its suggestion that "this case is indistinguishable

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

from *Turner*." *See* ECF No. 69 at 27. Union Pacific is incorrect.[2]

In *Turner*, the court of appeals held that the employee who failed a BNSF Railroad administered vision test could not prove that he was qualified because he had not appealed BNSF's decision to the FRA. 138 F.4th 224, 232 (5th Cir. 2025). In *Turner*, the Fifth Circuit was presented with a set of related, but distinct facts. There, the plaintiff was a longtime conductor working for BNSF Railway Company, who was removed from service following his failure of a "Federal Railroad Administration-approved 'field test'" 138 F.4th at 227. Although the conductor alleged that BNSF's field test did not mimic what he must see in the field to perform his job duties, and that he would have passed had it been an accurate reflection, there was no issue of fact as to whether the specific field test had been approved for use by the FRA. *Id.* at 227. Citing to the certification program requirements mandated under 49 C.F.R. §240.103 (and, by extension, §242.103), the *Turner* court acknowledged that "portions of the certification process are implemented by the railways themselves," but "the process – including vision test approval, 49 C.F.R. §§ 240.121 and 240.103 – is within the province of the FRA." *Id* at 299. The court explained that a "railroad must submit [a field test] to the FRA for approval" before using it. *Id.* at 229; *see* 49 C.F.R. 242, App'x D(2).

Further, the court reasoned that "Although BNSF could choose that test . . . **the FRA has**

---

[2] First, as a threshold matter, Union Pacific's prior arguments entirely admitted that the ADA applied to Plaintiff's claims. Before pivoting to a failure to exhaust remedies argument under the FRSA, Union Pacific argued extensively that the exhaustion requirements of the ADA applied and that, because Plaintiff had failed to timely file with the Equal Employment Opportunity Commission and thereby exhaust his administrative remedies, his claim was untimely. Although this argument was ultimately unsuccessful and reversed on appeal [*see Zaragoza v. Union Pac. R.R. Co.*, 657 F.Supp.3d 905 (5th Cir. 2023)], it shows that Union Pacific endorsed the applicability of the ADA. Union Pacific's new administrative exhaustion argument under the FRSA, therefore, should be deemed waived.

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

**the sole authority to approve it**. And although a railway's medical examiner has the discretion to construct the second test . . . the field test must follow the FRA's regulations." *Id.* at 229-30 (*emphasis added*). Specifically, the court found, the "test conditions must 'reasonably match' the operating and working conditions the conductor will experience in the field, which differ between railways." *Id.* at 230. Because the conductor failed the FRA-approved test and the medical examiner refused to otherwise qualify him, the court held that "BNSF had no option but to refuse to certify Turner and prohibit him from operating as a conductor because he did not mee the FRA's certification requirements." *Id.* In other words, because there was no question in the record that the BNSF field test had been approved by the FRA, the conductor's inability to pass it was a de facto failure to meet FRA standards. *See id.* at 231 ("By law, BNSF could not employ Turner…")

Unlike in *Turner*, the record here contains zero evidence that Union Pacific sought formal approval of the Light Cannon test thought proper channels prior to disqualifying Plaintiff, let alone that the FRA granted it. Between 2016 and 2019, Union Pacific submitted multiple proposed changes to its Section 240 Certification Program for Engineers and Section 242 Certification Program for Conductors pursuant to 49 C.F.R. §§ 240.101 and 240.103, and 49 C.F.R. §§242.101 and 242.103. [PSSF ¶¶ 44-53.] These programs required that Union Pacific identify "a procedure for evaluating visual and hearing acuity that complies with the criteria established in § 242.117." [49 C.F.R. § 242.101(a)(3); PSSF ¶ 44]. Union Pacific declined to do so. In fact, it did not even identify the use of its Light Cannon in a formal program submitted to the FRA until 2024. [PSSF ¶¶ 52-53.] While it is unclear from these records whether the FRA ever actually did an in-depth analysis of the Light Cannon through formal channels, it is certain that prior to 2024 no such formal process had occurred because Union Pacific had not initiated it. More importantly, even if an in-depth analysis *was* conducted in 2024, because of the changes Union Pacific made to the testing

4

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

process following Dr. Rabin's 2020 evaluation, the test that was submitted to the FRA for approval under 49 C.F.R. § 242.101 was different from the test used to disqualify Plaintiff. [PSSF ¶¶ 38-42.]

The only other evidence of an actual FRA review process that Union Pacific describes is an in-person demonstration of the Light Cannon to unidentified FRA employees. [DSF ¶ 43; Pl. Resp. to DSF ¶ 43.] Union Pacific does not offer evidence that the observers were FRA employees responsible for approving field tests. Further, the version of the Light Cannon shown to the visitors in 2015 was not even the same version given to Plaintiff in 2018. Any approval Union Pacific claims it got was informal at best and is not the sort of approval required by the FRA.[3] *Cf. Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 111 (D.C. Cir. 2020) (even though FRA provided "tentative" sign-off to certification program after an "audit," there was no agency action to review because the "[r]ailway never submitted" its conductor certification program under the proper procedures).

Ultimately, because the test that Plaintiff was issued had not been previously FRA-approved like the BNSF test in *Turner*, to suggest that he was bound by the same administrative exhaustion requirements as *Turner* simply does not follow. The Operating Crew Review Board may have the responsibility to review denials of certificate under FRA regulations, but by not previously approving the Light Cannon test or a program with the test under 49 C.F.R. §§242.101 and 242.103,the FRA had not functionally adopted Union Pacific's testing as an extension of its regulations. And because the FRA has not adopted the Light Cannon and does not mandate use of

---

[3] Union Pacific also argues that its expert witness, Steven Fender's approval of the Light Cannon evidences FRA approval. However, although Mr. Fender previously worked for the FRA, his 2022 review of the test was performed in his capacity as a retained expert for Union Pacific. [DSF ¶ 47].

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

the Light Cannon, Plaintiff's claims under the ADA do not create the type of choice between a rock and a hard place that *Turner* is concerned with. *See* 138 F.4th at 231. In the absence of such choice, the ADA and the FRSA can address different purposes that can exist harmoniously – i.e. the FRSA as a railroad safety statute, and the ADA as a protection against disability discrimination. S*ee* 49 U.S.C. § 20101; *Vann-Foreman v. Illinois Cent. R.R. Co.*, Case No. 19 C 8069, 2022 U.S. Dist. LEXIS 10485 *11, 2022 WL 180749 (N.D. Ill. Jan. 20, 2022) ("The subject matter of Title VII is discrimination. It is not a safety statutes. Thus Title VII and the FRSA address different subject matters entirely. Consequently, the court concludes that the FRSA does not preempt Title VII and plaintiff was not requires to exhaust any available remedies under the FRSA") (citation omitted); *Weeks,* 2017 U.S. Dist. 68441 ("Further, the subject matter of the FEHA and the ADA is discrimination. As relevant here, the subject matter of the FRSA and 49 C.F.R. Part 240 is the criteria for ensuring that safe qualified individuals operate locomotives. The ADA and FEHA are not safety statutes of regulations. The FRSA and the ADA/FEHA address different subject matters entirely") (citations omitted); *Earwood. V. Norfolk S. Ry. Co.,* 845 F. Supp. 880, 885 (N.D. Ga. 1993) ("The Court concludes that Plaintiff's FELA claims are not precluded by F.R.S.A. The two statutes do not purport to cover the same areas. . . . There is clearly no 'intolerable conflict' between the two statutes.')

**C.  <u>Fact Issues Preclude Summary Judgment on Smithson's Disability Discrimination Claims.</u>**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to [] discharge of employees, [and] other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). This includes a prohibition on "using qualification standards, employment tests or other selection criteria that screen out or tend to screen

6

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

out an individual with a disability[.]" 42 U.S.C. § 12112(b)(6).[4] Qualification standards include "medical, safety and other requirements established by [an employer] as requirements [] to be eligible for the position held[.]" 29 C.F.R. § 1630.2(q).

### 1)  Smithson Presents Direct Evidence of Disability Discrimination.

In an employment claim, "direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *see also Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475–76 (5th Cir. 2015), as revised (Feb. 3, 2015); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004). When an employee presents direct evidence of discrimination, the *McDonnel-Douglas* framework is not applicable. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 621–22 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Nall v. BNSF Ry. Co.* 917 F.3d 335, 341 (5th Cir. 2019); *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 762 (5th Cir. 1996). As a result, the plaintiff need not show the defendant's stated rationale is pretextual.[5] *Rizzo,* 84 F.3d at 762.

Here, Smithson presents direct evidence of discrimination. Union Pacific removed Smithson from service because of a perceived color vision deficiency, and then relied on that belief

---

[4] Such claims can be both disparate treatment claims and disparate impact claims. *See EEOC v. Dolgencorp, LLC*, 2022 WL 2959569, at *8 (N.D. Ala. July 26, 2022); 42 U.S.C. § 12112(b)(6) (prohibiting "using qualifications standards [] that <u>screen out or tend to screen out</u> an individual with a disability[.]") (emphasis added); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) ((b)(6) claims include disparate treatment).

[5] Even under a pretext analysis, Union Pacific's argument still fails. Smithson can show Union Pacific's stated rationale is pretext because, in removing him from work, it relied on an admittedly invalid test that its own consultant warned them was not ready to be implemented. PSSF ¶¶ 23-29, 36-43.

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION**
**FOR SUMMARY JUDGMENT**

to impose standard work restrictions that resulted in the loss of his job. PSSF ¶¶ 54-62. Multiple courts agree that this is direct evidence of discrimination.[6] *Fulbright v. Union Pac. R.R. Co.*, 3:20-CV-2392-BK, 2022 WL 975603, at *19-20 (N.D. Tex. Mar. 31, 2022) (employment actions taken because of an employee's medical status show "direct evidence of discrimination"); *Baker v. Union Pac. R.R. Co.* 580 F. Supp. 3d 647, 659 (D. Neb. 2022) ("There is direct evidence of discrimination because the defendant admittedly made the decision to remove him from work" based on his disability"); *Sanders v. Union Pac. R.R. Co*, 2021 WL 4783629, at *8 (D. Neb. Oct. 7, 2021) ("The record show's there is direct evidence of discrimination[.]"); *Campbell v. Union Pac. R.R. Co.*, 2020 WL 5300734, at *4 (D. Idaho Sept. 4, 2020) ("There is no material dispute that Union Pacific removed Campbell from the Trainman position because of his disability."); *see also Brasier v. Union Pac. R.R. Co.*, 2023 WL 129534, at *3 n.3 (D. Ariz. Jan. 9, 2023) (removal of employee based on Defendant's FFD Program is presumptively direct evidence of disability discrimination); *Hamilton v. Ortho Clinical Diagnostics*, 2014 WL 2968497, *5–6 (E.D. Ark. July 2, 2014) (evidence of a memorandum explaining that the reason for employee's termination was his lifting restrictions constituted direct evidence of disability discrimination.)

This interpretation is also consistent with the Fifth Circuit's direct evidence standard. *See Etienne,* 778 F.3d at 475–76. Under Fifth Circuit precedent, workplace comments constitute direct evidence if they are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *See id.* The evidence here undeniably satisfies these factors.

---

[6] The Court can grant summary judgment in favor of Smithson on this question. Fed. R. Civ. P. 56(f)(3).

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

First, multiple statements by CMO Dr. Holland during Union Pacific's FFD evaluation of Smithson were directly "related to" Smithson's protected characteristic. On April 2, 2018, Dr. Holland issued a proof of disability and statement of sickness to the RRB specifying that Smithson had been "disabled from performing [his] regular occupation" due to a "Reportable Health Event – Vision," and that Smithson had been diagnosed by Union Pacific with "Color Vision Deficit." PSSF ¶¶ 60-61. Neither RRB statement referenced Smithson's FRA decertification. *Id.* Several months later, after Union Pacific referred Smithson for additional color vision testing with Dr. Rabin, Dr. Holland reiterated his FFD determination removing Smithson from service relying on a diagnosis of "significant red-green color deficiency." DSF ¶¶ 57-64, PSSF ¶ 62. He further determined that, because Dr. Rabin diagnosed Smithson's color vision deficiency as hereditary, Smithson's work restrictions were permanent. PSSF ¶ 62. Crucially, in both instances, Dr. Holland does not merely state that Smithson had fallen short of FRA requirements or that he was unable to discriminate signal colors, but rather that it is his protanomalous CVD that disqualified him. PSSF ¶¶ 60-62. Second, the statements by Dr. Holland occurred close to the time of the adverse action. Indeed, Dr. Holland made these statements as a part of the Union Pacific FFD process under which Smithson was removed from service. DSF ¶¶ 57-64, PSSF ¶¶ 60-62. Third, Dr. Holland had the authority to make the FFD assessment and issued both the Notice of Pending Denial of FRA Certification and the ultimate denial itself. DSF ¶¶ 55, 64. Fourth, the statements were related to the challenged adverse action. Dr. Holland's statements about Smithson's protected characteristic were part and parcel of the FFD determination and were made in furtherance of Union Pacific's process that resulted in the loss of Smithson's job.

Ignoring these factors, Union Pacific urges the Court to adopt a heightened direct evidence standard—one that not only requires proof that an improper criterion was a basis for the adverse

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

decision, but also that the bad actor harbored "animus" towards the plaintiff. Fifth Circuit precedent makes clear that direct evidence does not require animus directed at the employee or ill-will directed at other people with the protected characteristic. *Rodriguez v. ConAgra Grocery Prod. Co.,* 436 F.3d 468, 480 (5th Cir. 2006). Rather, evidence that the protected characteristic played a role in the adverse decision is sufficient to demonstrate direct evidence. *Id.* (reversing summary judgment decision and granting partial summary judgment for the plaintiff because the employer's admission that plaintiff did not get the job "because of his uncontrolled diabetes" was direct evidence of discrimination and sufficient to establish liability); *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994) (finding manager's disparaging comments about the plaintiff's gender were direct evidence sufficient to deny summary judgment without requiring additional evidence that the manager harbored ill-will towards other women.) Indeed, where a plaintiff presents direct evidence of discrimination, that amounts to proof of a discriminatory motive. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

None of Union Pacific's cited cases warrant a different result. For example, in *Kitchen v. BASF*, 952 F.3d 247 (5th Cir 2020), the plaintiff was terminated for being intoxicated at work. There, the Fifth Circuit held that terminating someone for "arriving to work under the influence of alcohol is not equivalent to firing Kitchen because of a prejudice against alcoholics." 952 F.3d at 252. Similarly, in *Clark v. Champion Nat'l Security, Inc.,* 952 F.3d 570 (5th Cir. 2020), the plaintiff was terminated after falling asleep at his desk, and the comments the plaintiff relied upon as direct evidence made no reference to his alleged impairment (diabetes). 952 F.3d at 581-82; *see also Nall v. BNSF Ry. Co.,* 917 F.3d 335, 338 (5th Cir. 2019) (finding no direct evidence where statements by employer did not show the irreversible nature of plaintiff's condition "was the reason why Nall

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

would not be returning to work.")

Here, Dr. Holland explicitly referenced and relied on Smithson's perceived impairment—color vision deficiency—as the reason why he imposed work restrictions. PSSF ¶¶ 60-62. As a result, this case is easily distinguishable from *Kitchen* and *Clark*, and instead, is more akin to the Fifth Circuit's decision in *Rodriguez*. There, the Fifth Circuit *granted* summary judgment in the plaintiff's favor because the employer's statement that the plaintiff was not hired because of his uncontrolled diabetes was direct evidence of disability discrimination. *Rodriguez*, 436 F.3d at 480; *see also Rizzo,* 84 F.3d at 762 (reversing summary judgment order because there was direct evidence that the plaintiff "was removed from driving duties because of her hearing impairment.")

For these reasons, Union Pacific's attempt to inject the *McDonnell-Douglas* framework into this claim is error. Smithson presents direct evidence of discrimination and summary judgment is properly denied. *Fulbright,* 2022 WL 975603, at 24-25.

### 2) Smithson is a Qualified Individual with a Disability Under the ADA.

The ADA applies to qualified individuals with disabilities. Union Pacific does not dispute that Smithson is disabled or that it regarded him as having a disability within the meaning of the ADA. Rather, Union Pacific disputes that Smithson was a qualified individual under the statute. The evidence demonstrates otherwise.

"Qualification" is a two-step inquiry. Smithson must show: (1) that he "satisfies the requisite skill, experience, education and other job-related requirements" of the conductor position; and (2) that he can perform the essential functions of such position with or without a reasonable accommodation. *Gonzalez v. City of New Braunfels*, 176 F.3d 834, 837 (5th Cir. 1999). Concerning the first inquiry, Union Pacific appears to not contest that Smithson satisfies the requisite skill, experience, and education to perform his jobs. Indeed, Smithson worked nearly 12 years without

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

incident, and a jury could reasonably find that he has the general qualifications. PSSF ¶ 54.

Union Pacific instead argues that Smithson fails to meet a job-related qualification standard – i.e., obtaining FRA certification by passing Union Pacific's unvalidated, proprietary test that was rejected by its own experts. *See* PSSF ¶¶ 23-27, 36-43. Union Pacific's contention that Smithson is unqualified because he does not possess the required certification to perform his job fails because Union Pacific itself is the arbiter of whether Smithson could be certified. DSSF ¶¶ 15-16, 33-37, 52-64. Indeed, the policies that Union Pacific used to deny Smithson's certification are the very policies that Smithson alleges violate the ADA. *See Bates*, 511 F.3d at 990.

As Plaintiff discusses further *infra¸* unlike in *Turner*, the deciding factor in denying Plaintiff his FRA certification in 2018 was the fundamentally flawed, invalid, and unapproved Light Cannon test. *See Bates*, 511 F.3d at 990 ("[I]ndeed, it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge.") From a practical standpoint, if an ADA plaintiff must show that they are able to pass a qualification standard and earn certification as a prerequisite for challenging that same qualification standard, the plaintiff is caught in a Catch-22 that makes enforcement of disability discrimination law in any case where certification is at issue impossible. *Turner* does not stand for this proposition: there, the analysis concerning qualification followed on from the administrative exhaustion requirement – i.e. because the court determined that appeal to the FRA board was required to challenge the results of the FRA approved test, the failure to do so made proof of qualification impossible. 138 F.4th at 231. As discussed already above, any FRA appeal requirement should not apply here because the Light Cannon lacked FRA approval in 2018.

As to the "essential function" inquiry, the most obvious evidence that Smithson could

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION**
**FOR SUMMARY JUDGMENT**

perform the essential functions of his job with or without a reasonable accommodation is that he performed his job for years without incident. PSSF ¶¶ 54-56; s*ee Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 901 (8th Cir. 2006) (plaintiff proved he could perform essential functions of driving a forklift because he drove a forklift for defendant); *see also EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 927 (9th Cir. 2018), *as amended* (Sept. 12, 2018). To evade this obvious conclusion, Union Pacific emphasizes that Smithson failed Ishihara tests and that he testified that he experiences some degree of color-vision deficiency. However, these do not undermine Smithson's qualification under the ADA because Union Pacific's qualification standards are not part of a Smithson's prima facie case. *See Littlefield v. Nevada*, 195 F. Supp. 3d 1147, 1159 (D. Nev. 2016) (quoting *Bates,* 511 F.3d at 992–93) (Defendant "asserts a blanket safety-based qualification standard—beyond the essential job function—that is not mandated by law [and] screens out or tends to screen out an individual with a disability.").

Furthermore, the FRA itself has acknowledged that color-vision deficits can vary significantly and that many individuals who are unable to pass the Ishihara are entirely capable of discriminating colors on railroad wayside signals. PSSF ¶ 2. Smithson demonstrated his ability to read actual railroad wayside signals by passing Union Pacific's previous CVFT, which used a signal located in the SoSan railyard, and working without missing a signal for nearly 12 years. PSSF ¶ 54-56. Smithson was also regularly evaluated in the field during manger ride-alongs and demonstrated time and again that he had the color vision acuity to discriminate the different colored signal lights used on the Union Pacific line, as required by the FRA. PSSF ¶ 54; 49 C.F.R. Part 242 App'x D; PSSF ¶¶ 1-2; DSF ¶ 10. These facts show that, absent Union Pacific's discriminatory color-vision qualification standard, Smithson was able to perform the functions of his job.

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

### 3) Union Pacific's Light Cannon Test is Not a Valid Qualification Standard.

i.    Union Pacific's Color Vision Standards Fall Outside of the FRA Standards and Never Underwent a Validation Process.

Union Pacific relies on FRA regulations mandating color-vision testing as a defense for its facially discriminatory color-vision policies. In essence, Union Pacific has taken the position that the existence of the FRA's conductor certification requirements binds its hands and immunizes it from liability when it imposes work restrictions and removes an employee from service even though the FRA regulations mandate no such action. These arguments fail on two fronts.

First, although the FRA requires color-vision testing as a part of conductor certification, those regulations do not mandate the company's reliance on the on its own, unvalidated Light Cannon test. PSSF ¶¶ 1-2, 5. The FRA explains that "[t]here are many types of eye conditions and visual disturbances ranging in severity from very mild to severe and many types and designs of railroad signals and railroad operating rules." 49 C.F.R. § 242.117(h)(3); PSSF ¶ 2. And while it requires that conductors be allowed to undergo additional evaluation upon request if they fail a threshold assessment, the FRA leaves the development of the subsequent testing processes to the railroad, merely stating that such testing should take the form of ophthalmological referral, field testing, or other practical color testing. PSSF ¶ 1-5. In other words, Union Pacific's color-vision policies are its own, and the FRA regulations do not serve as a shield to liability under the ADA. *See Bates*, 511 F.3d at 998 (noting that reliance on government-imposed safety standards, while relevant to an employer's defenses, does not serve as a complete bar to a finding of ADA liability.") In addition, while Defendant correctly observes that FRA regulations include a requirement that that railroads determine whether employees can recognize and distinguish colored railroad signals, it does not authorize the company to create a method that violates the ADA. *See Belk v. Southwestern Bell Telephone Co.*, 194 F.3d 946, 951 (8th Cir. 1999) (employers must

14

"validate the test or exam in question for job-relatedness"). Therefore, Union Pacific's claimed reliance on the FRA regulations is unavailing.

Second, Union Pacific ignores that the company *chose* to change its testing procedures to require passage of the Light Cannon test, a test which it failed to validate per FRA regulations and which its own expert admits is invalid. While the FRA does not mandate specific testing protocols, it *has* established minimum standards for field and scientific testing. PSSF ¶¶ 6-11. Union Pacific's Light Cannon test fails to meet these minimum requirements. The Light Cannon device is distinct from wayside signals and was designed solely for the purpose of testing Union Pacific employees' color-vision, thus is best considered a form of clinical or scientific test. PSSF ¶¶ 18, 39-31. Given that, to date, the Light Cannon has never been the subject of rigorous peer reviewed study, the test falls well short of the FRA's requirements for scientific testing. PSSF ¶¶ 6-7, 23-26, 36-43.

Moreover, even if the Light Cannon qualifies as a field test, the FRA requires that tests be "valid, reliable, and comparable." PSSF ¶¶ 8-11. According to the FRA, "validity" is "the degree to which a test actually measures what the test is intended to measure." PSSF ¶ 11. Union Pacific's own consulting specialists testified to the importance of subjecting a color vision test to validation testing. PSSF ¶¶ 15, 17. Yet Union Pacific knew that its Light Cannon test fell short of FRA minimum validation standards even as it rolled the test out for use in 2016. Internal documents show the company decided to rely on color vision testing results from the Light Cannon even though the medical experts it hired to review the test determined it was not ready. PSSF ¶¶ 25-27, 35. The report issued by Dr. Rabin and Dr. Ivan following their initial evaluation of the Light Cannon stated unequivocally that the test in its then-current form was not ready to be implemented as a device to assess employees color-vision, and that, in addition to several hardware changes, the test should have undergone further rigorous validation. PSSF ¶¶ 24-26. Union Pacific ignored

15

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION**
**FOR SUMMARY JUDGMENT**

these recommendations and began using the Light Cannon to test employees just four months later, in April 2016, without subjecting it to any additional validation efforts. PSSF ¶¶ 27-28.[7]

And Union Pacific had still not completed any published validating studies by the time Smithson was administered the Light Cannon test and removed from service in 2018. PSSF ¶¶ 35-45. While it claims that the FRA, via its certification review board, determined that the Light Cannon complies with FRA standards, there is no evidence in the record that the FRA ever completed an evaluation of the test or produced any assessment of its validity. Pl.'s Response to DSF ¶¶ 43,45-46; PSSF ¶ 22. Union Pacific argues that decisions by the Locomotive Engineer Review Board establish that the Light Cannon was a valid test, yet both decisions cited were determined solely on the materials submitted to the Board by the petitioner and the railroad and did not involve an evaluation of the test itself. *See* Docket EQAL-2017-13, at 3; FRA Docket FRA-2017-0049, at 4. In *Marlow*, for example, the Light Cannon's validity was not at issue, and the Board merely determined that the test's protocols had been followed correctly. FRA Docket FRA-2017-0049, at 4-5. It wasn't until 2019 that Dr. Rabin initiated the first study of the Light Cannon test on individuals with normal color-vision. PSSF ¶¶ 35-43. The study determined that the test had a 26.5 percent false fail rate among so called "color-vision normal subjects." PSSF ¶ 38. Dr. Rabin testified that, based on these results, as of 2019, the Light Cannon was not a valid test. PSSF ¶ 42. Because the center piece of Union Pacific's color-vision certification policy – the Light Cannon test – does not comply with FRA regulations for the development and implementation of

---

[7] Defendant relies on *Brunskill v. Kansas City Southern Railway Co.* to suggest that the railroad is entitled to substantial deference in the application of color-vision testing policies. 2008 WL 413281 (W.D. Mo. Feb. 12, 2008). This argument is unavailing, however, because the decision in *Brunskill* predates the 2015 issuance of the FRA's guidance concerning color-vison tests. *Id.* There, the FRA had not yet instituted the requirement that color-vision testing be valid, reliable, and comparable, and as such, the court deferred to the determination of the railroad's chief medical officer alone. *Id.* at *29.

16

color-vision tests, the applicable federal regulations do not render Union Pacific's policy job-related, nor do they excuse Union Pacific from liability under the ADA. *See Bates*, 511 F.3d at 993. Union Pacific's suggestion that it removed Smithson from service in adherence with federal regulations fails.

### D. Union Pacific Acted with Reckless Indifference to Plaintiffs' Rights

Last, triable issues of fact exist as to whether Smithson is entitled to punitive damages under the ADA. Whether an employer acted with malice or reckless indifference to an employee's federally protected rights is not a question of whether the employer acted with "evil motive" or was aware that it was engaging in discrimination, but rather whether the employer discriminated "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. ADA* 527 U.S. 526, 536, 119 S.Ct. 2118 (1999); *Fair Hous. Ctr. Of Wash. V. Breier-Scheetz Props, LLC,* 742 Fed.Appx 116, 118 (9th Cir. 2018); *David v. Caterpillar, Inc.*, 185 F.Supp.2d 918, 925 (C.D. Ill. 2002). Here, by removing Plaintiffs from service on the basis of a perceived color-vision deficit using a test which Union Pacific failed to subject to proper validation studies, even in the face of a warning from their own expert that the test was "not ready," Union Pacific showed reckless indifference to the rights of its employees. *See* PSSF ¶ 23-28, 33-43.

### III.    CONCLUSION

For the above reasons, Union Pacific's motion for summary judgement should be denied.

Date:   March 20, 2026            HILDEBRAND MCLEOD & NELSON

                                  *s/ Gavin S. Barney*
                                  Anthony S. Petru* (CA #91399)
                                  petru@hmnlaw.com
                                  Gavin Barney* (OR #163382, CA #321880)
                                  barney@hmnlaw.com

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

5335 College Ave., Suite 5A
Oakland, CA 94618
Tel: (510) 451-6732

James H. Kaster* (MN #53946)
kaster@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel: (612) 256-3200
*admitted pro hac vice

Attorneys for Plaintiff Jimmy Smithson

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this March 20, 2026, a true and correct copy of the foregoing **PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to the following:

Lara C. de Leon (TX #24006957)
ldeleon@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
1100 NW Loop 410, Suite 700
San Antonio, TX 78213
Telephone: 512.382.8800


Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY


s/*Gavin S. Barney*
Gavin S. Barney

**PLAINTIFF'S RESONSE TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**