**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JIMMY J. SMITHSON,<br>*Plaintiff* | § § § | |
| v. | § § | Case No.  SA-21-CA-01225-XR |
| UNION     PACIFIC     RAILROAD<br>COMPANY,<br>*Defendant* | § § § § § | |

## ORDER GRANTING SUMMARY JUDGMENT

On this date, the Court considered Defendant Union Pacific Railroad Company's Motion

for Summary Judgment (ECF No. 69) and the associated briefing (ECF Nos. 70, 72, 73, 74).  After

careful consideration, the Motion is **GRANTED**, and this case is **DISMISSED.**

### INTRODUCTION

Plaintiff Jimmy J. Smithson worked as a conductor for Defendant Union Pacific Railroad

Company from 2006 to 2018.  ECF No. 69 at 10; ECF No. 72-1 at 1.  In 2018, Union Pacific

refused to recertify Smithson as a conductor, because he failed certain color-vision tests.  Smithson

claims that this refusal violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101

*et seq.*  Union Pacific argues that Smithson's failure to appeal the refusal to the Federal Railroad

Administration defeats his remaining ADA claims.  The Court agrees with Union Pacific.

### BACKGROUND

**I.     Regulatory Background**

"The Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20103(a), authorizes the Secretary

of Transportation to issue nationally uniform regulations and orders covering every area of railway

safety."  *Turner v. BNSF Ry. Co.*, 138 F.4th 224, 228 (5th Cir. 2025) (citing 49 U.S.C. § 20103(a)).

The Rail Safety Improvement Act amended the FRSA to allow the Secretary to "establish a

program requiring the licensing or certification . . . of any operator of a locomotive." *Id.* (alteration in original) (quoting 49 U.S.C. § 20135(a)). That power has been delegated to the Federal Railroad Administration ("FRA"), which has promulgated regulations accordingly. *Id.* at 229. "A conductor who fails to receive a certification according to FRA regulations cannot operate a train." *Id.*

a. Color-Vision Requirements

To be certified, a conductor must have "[t]he ability to recognize and distinguish between the colors of railroad signals." 49 C.F.R. §§ 242.109(a)(2), 242.117(b), 242.117(h)(3). To that end, FRA regulations require someone seeking certification or recertification to take a color-vision test. 49 C.F.R. §§ 242.109(a)(2), 242.117(b), 242.117(h)(3). One option is the 14-plate Ishihara test, 49 C.F.R. pt. 242 app. D, which "consists of a set of plates covered with colored dots which the test subject views in order to find a number composed of dots of one color which a person with various defects of color vision will confuse with surrounding dots."[1]

If someone fails their initial color-vision test, they "may request administration of a second, different, vision test." *Turner*, 138 F.4th at 227. "Ophthalmologic referral, field testing, or other practical color testing may be utilized depending on the experience of the examinee." 49 C.F.R. pt. 242 app. D § (4). If an examinee fails their second color-vision test, they can still be certified "[i]f, after consultation with a railroad officer, [a] medical examiner concludes that . . . the person has the ability to safely perform as a conductor." 49 C.F.R. § 242.117(j). But if an examinee fails both tests and a medical examiner does not determine that they can safely conduct trains, the examinee cannot be certified or recertified. *See Turner*, 138 F.4th at 230.

---

[1] *Ishihara test*, MERRIAM-WEBSTER, https://www.merriam-webster.com/medical/Ishihara%20test (last visited May 22, 2026).

   b.   The FRA's Administrative Review Process

If a railroad denies certification or recertification, the examinee "may petition the [FRA] to review the" denial. 49 C.F.R. § 242.501. The FRA "appeals process has three layers of review." *Turner*, 138 F.4th at 230. "First, the FRA's Operating Crew Review Board (OCRB) reviews the denial," considering "(1) whether the railroad's finding was supported by substantial evidence; (2) whether the railroad failed to follow proper procedures causing substantial harm;" and (3) "whether the railroad's legal interpretations are correct." *Id.*; 49 C.F.R. § 242.505. "If the OCRB affirms the railway's decision, the applicant can appeal . . . to a presiding officer who considers all relevant facts and determines the correct application of [FRA regulations] to the circumstances presented." *Turner*, 138 F.4th at 230–31. "[I]f the presiding officer affirms, the applicant can appeal to the FRA Administrator," who "may remand, vacate, affirm, reverse, alter, or modify" the presiding officer's decision. *Id.* at 231. The Administrator's decision can then be appealed "to the appropriate U.S. Circuit Court of Appeals." *Id.*

## II.   Factual Background

Smithson has undergone the conductor certification or recertification process four times. ECF No. 69 at 19–20; ECF No. 72-1 at 7. In 2006, 2010, and 2015, he failed the Ishihara test but passed Pacific Union's secondary color-vision test. ECF No. 69 at 19; ECF No. 72-1 at 7.

In 2016, Union Pacific began using a new secondary color-vision test—the "Light Cannon"—to evaluate examinees who failed the Ishihara test. ECF No. 69 at 16; ECF No. 72-1 at 5. During Smithson's 2018 recertification process, he failed both the Ishihara test and the Light Cannon test. ECF No. 69 at 20; ECF No. 72-1 at 7. After further evaluation by two eye doctors, ECF No. 69 at 21–22; ECF No. 72-1 at 8, Union Pacific denied Smithson's recertification. Smithson did not appeal that denial to the FRA. ECF No. 69 at 23; ECF No. 69-5 at 3.

After receiving a right-to-sue notice from the Equal Employment Opportunity Commission, Plaintiff brought this lawsuit asserting ADA claims for disparate treatment, disparate impact, and failure to accommodate. ECF No. 1. The Court dismissed the disparate-impact and failure-to-accommodate claims pursuant to Rule 12(b)(6). ECF No. 28. Union Pacific now moves for summary judgment, arguing that Smithson's remaining claims must be dismissed because he did not seek FRA review of Union Pacific's refusal to recertify him as a conductor.

## DISCUSSION

### I.    Summary Judgment Standard

To be entitled to summary judgment, a movant must show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56. The movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show summary judgment is inappropriate. *See Fields v. City of S. Hou.*, 922 F.2d 1183, 1187 (5th Cir. 1991). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Nor is a mere "scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v.*

4

*Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, it must be satisfied that no reasonable trier of fact could find for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, the court should review all evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).  The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and it must review all facts in the light most favorable to the nonmoving party.  *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.      Analysis

Because Smithson failed to avail himself of the FRA's administrative review procedures, this case must be dismissed.

"To make out a prima facie case of discrimination, [Smithson] must show, among other things, [that] he was 'qualified' for the job."  *Turner*, 138 F.4th at 228.  One requirement "[t]o be a 'qualified individual'" is having the required "licensing and certification."  *Id.* at 228 n.5.

In *Turner v. BNSF Railway Company*, the plaintiff, Tracy Turner, had worked as a conductor for the defendant, BNSF Railway, for fifteen years.  *Id.* at 226–27.  In 2020, Turner

failed both the Ishihara test and BNSF's secondary color-vision test. *Id.* at 227. A medical examiner did not determine that Turner could nevertheless safely conduct trains, so BNSF did not recertify him. *Id.* Like Smithson, Turner did not appeal to the FRA but instead sued under the ADA. *Id.*

The Fifth Circuit held that Turner's lack of certification, combined with his failure to exhaust administrative remedies related to the denial of his recertification, prevented him from establishing that he was qualified to be a conductor. *Id.* at 228. If he "believe[d] that he deserve[d] certification despite BNSF's efforts to comply with" FRA regulations, he had to "go to the font of th[e] decision-and rule-making authority: the FRA." *Id.* at 231. The Fifth Circuit "has required administrative exhaustion in cases like this where an employment action was based on [a] failure to satisfy standards established by statute or regulation." *Id.* This exhaustion requirement is based on the agency's "greater competence in determining when its safety regulations are met." *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016); *Turner*, 138 F.4th at 231–232 (relying in part on *Williams*). Given all this, the "failure to receive a certification required by federal law, and the failure to exhaust administrative remedies related to that certification, means the plaintiff . . . cannot show he is a 'qualified individual' under the ADA." *Turner*, 138 F.4th at 232.

Like Turner, Smithson was not recertified, and he did not appeal the denial of his recertification to the FRA. So he cannot show that he is a qualified individual for purposes of his ADA claim. "[A]ny disagreement [Smithson] ha[d] with [Union Pacific]'s decision not to recertify him" was "under the purview of the FRA. But [he] never gave the FRA a chance to have a final say on whether he should be certified." *Id.* at 230. So his ADA claims must fail.

Smithson argues that *Turner* is distinguishable because the FRA had approved BNSF's secondary color-vision test. ECF No. 72 at 8. By contrast, Smithson argues that there is a fact

issue regarding whether the FRA approved the Light Cannon test before Smithson took it. ECF No. 72 at 10. He argues that a lack of approval would mean that "the FRA had not functionally adopted Union Pacific's testing as an extension of its regulations." *Id.* Further, *Turner* expressed concern about "forc[ing] employers into a choice between the rock of ADA liability and the hard place of regulatory violation." *Turner*, 138 F.4th at 231. Smithson argues that a lack of approval would mean that Union Pacific faced no such choice, because it could have complied with the ADA without creating any conflict with FRA regulations. ECF No. 72 at 11.

Even assuming that the FRA did not approve the Light Cannon test, there are at least three major problems with Smithson's attempts to distinguish *Turner*. First, *Turner*'s holding is broader than Smithson acknowledges. As stated above, "failure to receive a certification required by federal law, and the failure to exhaust administrative remedies related to that certification, means the plaintiff . . . cannot show he is a 'qualified individual' under the ADA." *Id.* at 232. That language is not limited to tests the FRA has "functionally adopted . . . as an extension of its regulations." Smithson failed to receive a certification required by federal law and did not exhaust his administrative remedies related to that certification. So *Turner* applies.

Second, *Turner* expressed concern about "tak[ing] the review of a denial of a conductor certification out of the 'exclusive jurisdiction' of the federal courts of appeal and improperly plac[ing] it in the hands of a federal district court." *Id.* (citing 28 U.S.C. § 2342(7)). Allowing Smithson's claim to proceed would do just that.

Third, adopting Smithson's argument would significantly undermine *Turner*'s exhaustion requirement. As discussed above, to be qualified under the ADA, one must have the legally required "licensing and certification." *Id.* at 228 n.5. If someone is denied such licensing or certification, they will, like Smithson, presumably argue that the denial was in error due to some

7

failure to comply with relevant regulations.  Most, if not all, plaintiffs in that position could make essentially the same argument Smithson does: "the applicable regulations did not require the defendant to do what it did, so the defendant did not face any 'rock-and-a-hard-place' choice between violating the ADA or violating the regulations."  In considering this kind of argument, district courts would have to apply the relevant regulations, which would undermine the point of *Turner*'s exhaustion requirement—respecting the agency's "greater competence in determining when its safety regulations are met."  *Williams*, 826 F.3d at 810; *Turner*, 138 F.4th at 231–232 (relying in part on *Williams*).

Indeed, the Plaintiff in *Turner* argued that BNSF failed to comply with applicable regulations; most notably, he argued that BNSF's secondary color-vision test did not adequately match real-life conditions.  *Turner*, 138 F.4th at 227, 229 n.9, 230.  If that argument had prevailed, BNSF would not have been "between the rock of ADA liability and the hard place of regulatory violation," *id.* at 231, because FRA regulations would not have required it to deny Turner's recertification.  Yet the Fifth Circuit did not rule on the issue.  Instead, it held that "[b]ecause the FRA's regulations prohibited BNSF from recertifying Turner when he failed two vision tests and was not cleared as safe to conduct a train by the railway's medical examiner, any disagreement Turner ha[d] with BNSF's decision not to recertify him" was "under the purview of the FRA."  *Id.* at 230.  The same goes for Smithson.

## CONCLUSION

For the foregoing reasons, Union Pacific's Motion for Summary Judgment (ECF No. 69) is **GRANTED**, and this case is **DISMISSED.**  A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 27th day of May, 2026.

                                  _____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE